**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kirby WELCH, Defendant-Appellant.**

No. 86–5039.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1986.

Decided July 6, 1987.

Stephen Jon Cribari, Deputy Federal Public Defender (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief), for defendant-appellant.

Jerry Wayne Miller, Asst. U.S. Atty., Asheville, N.C. (Kenneth W. McAllister, U.S. Atty., Douglas Cannon, Asst. U.S. Atty., Greensboro, N.C., Becky M. Strickland, Paralegal Specialist, on brief), for plaintiff-appellee.

Before WIDENER, PHILLIPS, and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

The appellant, an American Indian, appeals his convictions for first degree rape and for a first degree sexual offense (engaging in a sexual act with a child under thirteen years of age and at least four years younger than the defendant). The victim was a female American Indian age three and the offense occurred on the Cherokee Indian Reservation in the Western District of North Carolina. The first degree rape count was charged in Count 1 under 18 U.S.C. §§ 13 [1] and 1153 [2] and General Statutes of North Carolina § 14–27.-2(a)(1).[3] The first degree sexual offense was charged in Count Two of the indictment under 18 U.S.C. §§ 13 and 1153 and N.C.Gen.Stat. § 14–27.4(a)(1).[4]

Appellant challenges his convictions and sentences under the Assimilative Crimes Act, 18 U.S.C. § 13, and the North Carolina statutes. He claims that these North Carolina statutes do not apply and that he should have been charged only under 18 U.S.C. § 1153, because the alleged acts were those of one Indian against another Indian within Indian country. He also claims that there was not sufficient evidence to sustain his convictions; that the

---

1. 18 U.S.C. § 13 governs the laws of states adopted for areas within federal jurisdiction:

    Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

2. 18 U.S.C. § 1153 pertains to offenses committed within Indian country:

    Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, rape, involuntary sodomy, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

    As used in this section, the offenses of burglary, involuntary sodomy, and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

    In addition to the offenses of burglary, involuntary sodomy, and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

3. N.C.Gen.Stat. § 14–27.2 defines first-degree rape.

    (a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

    (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and at least four years older than the victim....

4. N.C.Gen.Stat. § 14–27.4 defines first-degree sexual offense.

    (a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

    (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim....

district judge abused his discretion in not admitting the testimony of appellant's expert witness; and that he was denied a fair trial because the United States Attorney cross-examined certain defense witnesses on their having invoked their Fifth Amendment rights when called to testify before the grand jury that indicted the appellant.

We find that the indictment was prepared and the case was tried under North Carolina law as to the elements of the crimes. However, neither the Assimilative Crimes Act nor the North Carolina statutes were applicable to these facts. We find that the United States District Court did not have jurisdiction to try either Count One or Count Two. Therefore we reverse and remand.

## I.

The indictment against the appellant charged:

### COUNT ONE

That between on or about October 1, 1983 and October 17, 1985, within the Western District of North Carolina, and the special territorial jurisdiction of the United States, that is, the Cherokee Indian Reservation,

### KIRBY WELCH

an Indian male, did engage in vaginal intercourse with a child less than 13 years of age and more than four years younger than he, that is KIRBY WELCH performed vaginal intercourse on Laura Blythe, a three year old or younger Indian female, in violation of Title 18, United States Code, Sections 13 and 1153, and North Carolina General Statutes, Section 14–27.2(a)(1).

### COUNT TWO

That between on or about October 1, 1983 and October 17, 1985, at Cherokee, within the Western District of North Carolina and within the special territorial jurisdiction of the United States, that is, the Cherokee Indian Reservation,

### KIRBY WELCH.

an Indian male who was then twenty years of age or yougner (*sic*), did engage in a sexual act with a child under the age of 13 years and more than four (4) years younger than he, that is, KIRBY WELCH placed his fingers in Laura Blythe's vagina, an Indian female then three years of age or younger, in violation of Title 18, United States Code, Sections 13 and 1153, and North Carolina General Statutes, Section 14–27.4(a)(1).

The evidence presented at trial was sufficient to convict Welch of each count under the statutes of North Carolina. The record discloses evidence, when viewed in light most favorable to the prosecution, sufficient to prove:

(1) Kirby Welch and Laura Blythe are both members of the Eastern Band of the Cherokee Indians;

(2) the sexual acts took place in Kirby Welch's room at the Bessie Welch residence on the Cherokee Indian Reservation;

(3) during the time of the incident Kirby Welch lived at the residence of Bessie Welch and had his own room;

(4) that Laura Blythe was born May 3, 1982, and Kirby Welch was born January 28, 1965;

(5) that Kirby Welch had sexual intercourse with Laura Blythe;

(6) that Kirby Welch placed his finger into the vagina of Laura Blythe;

(7) that Kirby Welch's penis was infected with a venereal disease, chlamydia, and Laura Blythe's vagina was infected with the same venereal disease.

## II.

■ Because the alleged crimes are those of one Indian against another Indian and occurred within Indian country, 18 U.S.C. § 1153 is applicable. The prosecution contends that under this section the crime of rape of one Indian by another Indian in Indian country is punishable in accordance with the laws of the State where the offense was committed, and that the definition of the offense is to be determined by reference to state law. As au-

thority for this position the government cites Act of May 24, 1949, c. 139 § 26, 63 Stat. 94, discussed in the "Historical and Revision Notes" to 18 U.S.C. § 1153. However, this section was amended by the Indian Crimes Act of 1976 and this amendment provided that, with the exception of burglary and incest, the offenses contained in the first paragraph of § 1153 are to be defined and punished in accordance with federal law. *See* 1976 U.S. Code Cong. & Ad. News 1129. The essential elements of the offenses listed in § 1153, other than burglary, incest and other crimes not defined by federal law, are determined by the specific federal statute which defines and punishes the crime. *U.S. v. Maloney,* 607 F.2d 222 (9th Cir.), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1979).

Rape is punishable under 18 U.S.C. § 2031 and carnal knowledge of a female under the age of sixteen is punishable under 18 U.S.C. § 2032. Rape under the federal definition requires force by the offender and absence of consent by the victim. *Williams v. United States,* 327 U.S. 711, 715, 66 S.Ct. 778, 780, 90 L.Ed. 962 (1946). Rape under federal law does not include what some states refer to as "statutory rape," or intercourse with a female under the age of consent. *U.S. v. Rider,* 282 F.2d 476 (9th Cir.1960).

The essential elements of rape under federal law are not the same as the essential elements under N.C.Gen.Stat. § 14–27.-2(a)(1). The North Carolina law does not require proof of force or that the act was against the will of the victim if the victim is under the age of thirteen and the defendant is at least twelve years of age and at least four years older than the victim, and the defendant engaged in vaginal intercourse with the victim.

It is obvious from the record that Kirby Welch was convicted of rape under the North Carolina statutory definition of first degree rape and not under the federal definition which requires force and lack of consent. What was proved against Welch was that he had intercourse with a female under the age of thirteen years and that he was at least twelve years of age and at least four years older than the victim.

Welch was convicted in Count Two under N.C.Gen.Stat. 14–27.4 of a first degree sexual offense, which was a sexual act, other than intercourse, when the victim is under the age of thirteen and the defendant is at least twelve years old and at least four years older than the victim.

The case was tried, argued and presented to the jury under North Carolina law, and not under federal law, as to the definitions of the offenses charged and their essential elements. The jury was instructed that under Count One the government was not required to prove any force or act of violence by the defendant. Under Count Two the jury was instructed on the elements of first degree sexual assault under North Carolina Law. The sentences of consecutive life terms were the sentences applicable under N.C.Gen.Stat. § 14–1.1 and not under 18 U.S.C. §§ 2031 and 2032.

The Assimilative Crimes Act, 18 U.S.C. § 13, does not apply to crimes committed by one Indian against another Indian in Indian country, which is the factual frame to the present appeal. Cases with this factual predicate must involve one of the offenses set forth in the Major Crimes Act of 1885, 18 U.S.C. § 1153, for the United States District Court to have jurisdiction. If the offense charged is not listed in § 1153, then the case is to be resolved by the Indian Tribal Council. To understand the reasoning underlying this conclusion, it is necessary to review a short history of American Indian jurisprudence, as set forth in *Keeble v. U.S.,* 412 U.S. 205, 209–212, 93 S.Ct. 1993, 1996–1997, 36 L.Ed.2d 844 (1973) (footnotes omitted):

> The Major Crimes Act was passed by Congress in direct response to the decision of this Court in *Ex parte Crow Dog,* 109 U.S. 556 [3 S.Ct. 396, 27 L.Ed. 1030] (1883). The Court held there that a federal court lacked jurisdiction to try an Indian for the murder of another Indian, a chief of the Brule Sioux named Spotted Tail, in Indian country. Although recognizing the power of Congress to confer such jurisdiction on the federal courts,

the Court reasoned that, in the absence of explicit congressional direction, the Indian tribe retained exclusive jurisdiction to punish the offense. *Cf. Talton v. Mayes*, 163 U.S. 376 [16 S.Ct. 986, 41 L.Ed. 196] (1896); *Worcester v. Georgia*, 6 Pet. 515 [8 L.Ed. 483] (1832).

The prompt congressional response—conferring jurisdiction on the federal courts to punish certain offenses—reflected a view that tribal remedies were either nonexistent or incompatible with principles that Congress thought should be controlling. Representative Cutcheon, sponsor of the Act, described the events that followed the reversal by this Court of Crow Dog's conviction:

> "Thus Crow Dog went free. He returned to his reservation, feeling, as the Commissioner says, a great deal more important than any of the chiefs of his tribe. The result was that another murder grew out of that—a murder committed by Spotted Tail, jr., upon White Thunder. And so these things must go on unless we adopt proper legislation on the subject.
>
> It is an infamy upon our civilization, a disgrace to this nation, that there should be anywhere within its boundaries a body of people who can, with absolute impunity, commit the crime of murder, there being no tribunal before which they can be brought for punishment. Under our present law there is no penalty that can be inflicted except according to the custom of the tribe, which is simply that the 'bloodavenger' —that is, the next of kin to the person murdered—shall pursue the one who has been guilty of the crime and commit a new murder upon him....
>
> If ... an Indian commits a crime against an Indian on an Indian reservation there is now no law to punish the offense except, as I have said, the law of the tribe, which is just no law at all." 16 Cong.Rec. 934 (1885).

The Secretary of Interior, who supported the Act, struck a similar note:

> "If offenses of this character [the killing of Spotted Tail] cannot be tried in the courts of the United States, there is no tribunal in which the crime of murder can be punished. Minor offenses may be punished through the agency of the 'court of Indian offenses,' but it will hardly do to leave the punishment of the crime of murder to a tribunal that exists only by the consent of the Indians of the reservation. If the murderer is left to be punished according to the old Indian custom, it may become the duty of the next of kin to avenge the death of his relative by either killing the murderer or some one of his kinsmen...."

In short, Congress extended federal jurisdiction to crimes committed by Indians on Indian land out of a conviction that many Indians would "be civilized a great deal sooner by being put under [federal criminal] laws and taught to regard life and the personal property of others." 16 Cong.Rec. 936 (1885) (remarks by Rep. Cutcheon). That is emphatically not to say, however, that Congress intended to deprive Indian defendants of procedural rights guaranteed to other defendants, or to make it easier to convict an Indian than any other defendant. Indeed, the Act expressly provides that Indians charged under its provisions "shall be tried in the same courts, *and in the same manner*, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States." 18 U.S.C. § 3242 (emphasis added).

When there is a crime by an Indian against another Indian within Indian country only those offenses enumerated in the Major Crimes Act may be tried in the federal courts. *United States v. Antelope*, 430 U.S. 641, 643, 97 S.Ct. 1395, 1397, 51 L.Ed.2d 701 (1977).

The sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by

implication as a necessary result of their dependent status.

*United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). The "power to punish offenses against tribal law ... is an aspect of retained sovereignty...." *Wheeler*, 435 U.S. at 326–27, 98 S.Ct. at 1087–88.

The Major Crimes Act has been amended many times in the last hundred years, but its present language, which is the language that was in effect at the time of the offenses were committed in the present case, does not include any language or description of an offense that is similar to a "first degree sexual offense" under the North Carolina General Statutes § 14–27.4(a)(1).

 As disgusting and reprehensible as Welch's actions may be, he was not tried or sentenced as the federal law requires. As an Indian accused of offenses against the person of another Indian within Indian country, he must be tried under 18 U.S.C. § 1153. To prove rape under this section there must be proof beyond a reasonable doubt of the use of force by the defendant and the lack of consent by the victim. These essential elements were neither charged nor proved against Welch. The district court did not have jurisdiction to try Welch on a charge of rape under North Carolina Law. Its jurisdiction is under 18 U.S.C. § 1153 and one charged and tried thereunder must be charged and tried under the federal definition of rape. This was not done and the rape conviction under Count One may not stand.

Because the offense covered by Count Two of the indictment is an offense by an Indian against an Indian, and occurred in Indian country, and because such offense is not set forth in 18 U.S.C. § 1153, the district court had no jurisdiction to try Kirby, and his conviction on Count Two must be set aside.

Since we have decided that the district court did not have jurisdiction to try Welch on either count of the indictment under the Assimilative Crimes Act, it is not necessary for us to address the other exceptions. We therefore reverse the convictions under both counts of the indictment.

REVERSED AND REMANDED.