BRISCOE, Circuit Judge.
After segmented bench trials, the district court found Native American juveniles “S.W.” and “R.K” (together, “defendants”) guilty of an act of juvenile delinquency under 18 U.S.C. § 5031-37. The delinquent act was arson under 18 U.S.C. § 1153 and defined by 18 U.S.C. § 81. The district court sentenced S.W. to eighteen months’ confinement and three years’ supervision. The district court sentenced R.K. to three years’ probation and twelve months’ home detention. Defendants jointly appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.
Defendants’ appeals center on the definition of “person” in 18 U.S.C. § 1153(a)’s phrase: “Any Indian who commits against the person or property of another Indian or other person any of the following offenses .... ” (emphasis added). First, defendants argue that context and statutory construction dictate that “person” is restricted to only living individuals. Second, and alternatively, defendants contend that at its broadest, “person” can only include living individuals or corporations, public and private. Under this definition, defendants argue that there was insufficient evidence to establish that the arson victim was a corporation. Third, defendants argue that the district court abused its discretion by permitting the prosecution to reopen its cases to present evidence related to the corporate status of the arson victim. Fourth, defendants argue that the charging information was insufficient because it failed to provide sufficient identification of the arson victim and its status.
I
In April 2007, defendants broke into the Ute Mountain Presbyterian Church. While inside, defendants vandalized the church and started a fire. In December *1165 2007, the government charged defendants with acts of juvenile delinquency. The information stated defendants’ tribal membership, identified defendants as juveniles, and charged that defendants “willfully and maliciously set fire to or burned a building, namely, the Ute Mountain Presbyterian Church, located within the exterior boundaries of the Ute Mountain Ute Indian Reservation.” R. Vol. I Doc. 2 at 1. The government later filed a superseding information that added a charge of aiding and abetting, but did not change any other description. Defendants denied the allegations.
On February 5, 2008, the district court began R.K’s trial. Although the government presented seven witnesses, no evidence was presented regarding the ownership of the church. After the prosecution rested, R.K. moved for a judgment of acquittal, arguing that the prosecution failed to identify the victim of the arson, which was an element of the charged crime. Ultimately, the district court agreed with R.K. and found, “there is no proof of who owned this church, and ... there ... has been no offense committed because there is an element missing.” R. Vol. IIA at 100-01. The prosecution requested an overnight chance “to review the situation and possibly move to reopen the case.” R. Supp. Vol. I at 2.
The next morning, February 6, 2008, the prosecution moved to reopen its case. R.K. objected and characterized the motion as an attempt to get “two bites at the apple.” Id. at 6. The district court granted the motion to reopen because of “the overriding interest in justice.” Id. at 9. The district court also granted R.K’s request for a continuance to allow for discovery regarding the ownership of the church.
Also on February 6, 2008, the district court began S.W.’s trial. The prosecution presented nine witnesses. Edward Rousset, the pastor of the Ute Mountain Presbyterian Church, testified that the church had few members. R. Vol. II at 65. When asked “who owns the building,” Pastor Rousset responded, “The Presbyterian — it’s owned by the Presbyterians. It’s Presbyterian Western Colorado.” Id. at 66. Later during direct examination, Pastor Rousset confirmed that “the building of the church is actually owned by the Presbyterian church[.]” Id. at 68. Pastor Rousset also confirmed that the insurance policy on the building was “paid to the chureh[.]” Id. at 71. On cross examination, however, Pastor Rousset acknowledged that he did not know how the Presbyterian church obtained title to the building. Id. at 69. The prosecution then rested “with some hesitation and reservation.” Id. at 71.
After the close of the prosecution’s case, S.W. moved for judgment of acquittal, asserting arguments similar to those R.K. had raised. In light of Pastor Rousset’s testimony, S.W. also moved for a continuance to pursue discovery regarding the church’s ownership. The prosecution took no position on the requested continuance. The district court granted the continuance and ordered briefing on the elements of 18 U.S.C. § 1153.
In its briefing before the district court, the prosecution identified the Ute Mountain Presbyterian Church as the victim of the arson. The prosecution argued that the Ute Mountain Presbyterian Church, which it considered to be an association or society, falls within the definition of “person” under 18 U.S.C. § 1153 as defined by 1 U.S.C. § 1 — “the word[ ] ‘person’ ... include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.” S.W. countered by arguing that the context of 18 U.S.C. § 1153 restricted “person” to only individuals, or individuals and corporations.
*1166 On March 13, 2008, the district court held a status conference on both cases. During this conference, the prosecution moved to reopen its case against S.W. S.W. objected. The district court granted the request to reopen “in the interest of justice and the truth-finding function.” R. Vol. VI at 9. Counsel for R.K. agreed that “if the Court wants to go forward on [S.W.’s] case, then make findings of fact and then make — then rule that’s what the law is on the case, after that ... we may-very well be willing to accept [that] finding of fact and ruling of law, even if it’s adverse to us ... I don’t see any reason why the evidence would be substantially different in [R.K.’s] case or the Court’s rulings on the law would be different.” Id. at 6.
Three days later, on March 17, 2008, the district court reconvened S.W.’s trial. The government presented four additional witnesses. The additional testimony addressed ownership of the church building and included the submission of leases covering periods before and after the arson, and the building’s insurance policy. S.W. testified for the defense. After closing arguments, the district court found that “the Presbytery of Western Colorado is clearly a nonprofit corporation, according [to] all the documentation.” R. Vol. IV at 71. Additionally, the district court found that the Ute Mountain Presbyterian Church “is ... a body or a building that was built by the Presbyterian church, the United Presbytery of Western Colorado, and is financed and run by and owned by the Presbytery of Western Colorado.” Id. at 72. To support these findings, the district court relied on: (1) the lease in effect at the time of the arson that was signed by the Presbytery of Western Colorado; (2) the insurance policy naming the Presbytery of Western Colorado as the “owner or holder of the insurable interest in the Ute Mountain Presbyterian Church”; (3) the payment to the Presbytery of Western Colorado of the insurance proceeds resulting from the arson; and (4) “that the entire course of conduct by everyone involved here treats this piece of property, namely the church building ..., as the property of the Presbytery of Western Colorado.” Id. at 73. Based on these findings,[1] the district court found there was “adequate proof that [S.W.] committed arson against the property of a person, namely the Presbytery of Western Colorado, a body corporate.” Id. at 75.
On April 7, 2008, the district court reconvened R.K.’s trial. The parties stipulated that evidence from the second segment of S.W.’s trial would be treated as evidence in R.K.’s trial. The district court made similar factual findings as were made in S.W.’s trial.
After disposition hearings were held for S.W. and R.K. and judgments were filed, defendants filed timely appeals. We granted defendants’ joint motion to consolidate the appeals.
II
There are four issues on appeal: (1) the proper definition of “person” in 18 U.S.C. § 1153’s language “[a]ny Indian who commits against the person or property of another Indian or other person any of the following offenses ... ”; (2) whether the prosecution provided sufficient evidence to prove beyond a reasonable doubt that the owner of the Ute Mountain Presbyterian Church was a “person” under this definition; (3) whether the district court abused its discretion in allowing the prosecution to reopen its case and present evidence con *1167 cerning the ownership of the Ute Mountain Presbyterian Church; and (4) whether the information, which did not set out who owned the Ute Mountain Presbyterian Church, sufficiently charged defendants with a violation of 18 U.S.C. § 1153.

1. The definition of “person”

a. Statutory language analysis

To determine what entities are “persons” under § 1153, we first examine the statutory language. See Lippoldt v. Cole, 468 F.3d 1204, 1212 (10th Cir.2006) (conducting a similar inquiry of the word “person” under the language of 42 U.S.C. § 1983). Section 1153(a) provides in pertinent part:
Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely ... arson ... within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
Three variations of “person” appear in this language. While we acknowledge the presumption that “identical words used in different parts of the same act are intended to have the same meaning,” that presumption “yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.” Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 595, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (internal quotation and citation omitted).
The varying usage of “person” in 18 U.S.C. § 1153(a) indicates different definitions. Read in context, the first use of “person” — “commits against the person or property of another” — references the physical body of a living individual. E.g. Webster’s New International Dictionary of the English Language 1686 (3d ed.1993) (listing “the body of a human being” as one definition of “person”). This is the only logical reading of “person” in this context. The second use of “person” — “of another Indian or other person” — refers to an entity that either has a physical body or that can own property, and it is this reference to “person” that is the focus of our inquiry. The third use of “person”— “all other persons committing any of the above offenses” — suggests a living individual capable of committing the listed offenses. Because the changing uses of “person” require different definitions, the plain meaning of “person” in this statutory context is unclear. See United States v. Jimenez, 507 F.3d 13, 19 (1st Cir.2007) (listing several definitions of “person” and noting “[t]he word ‘person’ in isolation admits of more than one meaning”).
Nevertheless, defendants argue that the second use of “person” in the statute refers only to living individuals. To support this argument, defendants cite United States v. Bly, 510 F.3d 453, 463 (4th Cir. 2007), and the principle of statutory construction that, if possible, no word in a statute should be construed to be superfluous. E.g. Ansari v. Qwest Comm’ns Corp., 414 F.3d 1214, 1218 (10th Cir.2005) (citing TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)). Without further explanation, defendants assert “[a]lowing the phrase ‘Indian or other person’ to include non-individuals would render the word [‘Indian’] insignificant....” Aplt. Br. at 32 (quotation omitted). We note the full context of the cited phrase states: “Any Indian who commits against the person or property of another Indian or other person any of the following offenses....” 18 U.S.C. § 1153(a). The statute can be clearly read to include crimes against the property of another person without negating the significance of the reference to crimes against the person or property of another “Indian.”
*1168 Defendants cite the Fourth Circuit’s statement in Bly in support of their contention that “person” as used in 18 U.S.C. § 1153(a) refers only to living persons:
Bly’s proposition that the term “person,” as used in the Extortion Element, should exclude all sovereign entities and their subparts, has little appeal in the criminal law context.... In support of this proposition, Bly relies on two Ninth Circuit decisions arising under 18 U.S.C. § 1153 (Indian major crimes statute) .... The Ninth Circuit ruled in those cases that a government entity could not be a victim under § 1153, because such an entity was not a living person. Even if correctly decided, those decisions seem readily distinguishable from our Extortion Element issue, in that § 1153 appears, by its terms, to relate exclusively to living persons.
510 F.3d at 463 (citations omitted). We are hesitant to follow this dicta, which begins with the caveat “[e]ven if correctly decided.” Id. We conclude that defendants’ reliance on Bly is irrelevant to our present inquiry.[2] Similarly, it is unclear how defendants reach the conclusion that an expanded definition of “person” beyond living individuals renders the word “Indian” superfluous.
The Supreme Court in Rowland v. Cal. Men’s Colony, Unit II Men’s Advisory Council, 506 U.S. 194, 201-06, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993), provided guidance, in the form of four examples, for determining when the statutory context clearly restricts the definition of “person” to a living individual. First, whether the statute indicates that the “person” is capable of self-representation in court. Id. at 201, 113 S.Ct. 716. Second, whether the statute uses adjectives or conditions, such as “poverty,” that are nonsensical when applied outside of the living individual context. Id. at 203, 113 S.Ct. 716. Third, whether the statute requires the entity to take an oath. Id. at 204, 113 S.Ct. 716. Fourth, whether the statute applies criteria, such as tests for “necessities of life,” that would be irrelevant to artificial entities. Id. at 206, 113 S.Ct. 716. From these examples, we infer that for “person” to mean only living individuals, the statute must suggest legal action that only a living individual may undertake or apply adjectives or tests that distinctly relate to the human condition. The present use of “person” requires only that the entity have a physical body or possess property. Because “persons” other than living individuals can possess property, we conclude that the statutory context does not require a “person” to be a living individual.[3]

*1169
b. Legislative history

To the extent the plain meaning of the statutory language and context of “person” is unclear, we turn to the “ ‘legislative environment’ in which the word [person] appears,” searching for an “indicia of congressional intent at the time the statute was enacted.” Lippoldt, 468 F.3d at 1212 (internal citation and quotation omitted). The legislative history of § 1153 began with the Major Crimes Act of 1885. Keeble v. United States, 412 U.S. 205, 205 n. 1, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). The relevant phrase — “against the person or property of another Indian or other person” — appeared in the original statute. Id. at 206 n. 2, 93 S.Ct. 1993. While later amendments added offenses and federal definitions for some of the offenses, arson was one of the original offenses identified. Id.; United States v. Welch, 822 F.2d 460, 463 (4th Cir.1987) (discussing amendment by the Indian Crimes Act of 1976). For contemporaneous guidance, we look to the Dictionary Act of 1871. Lippoldt, 468 F.3d at 1214-15 (“[I]n attempting to discern the meaning of ‘person’ ... we look not to how the words are defined now, but rather at how they were defined at the time the statute was enacted.”).
The Dictionary Act of 1871 “was designed to supply rules of construction for all legislation.” Inyo County, Cal. v. Paiute-Shoshone Indians, 538 U.S. 701, 713 n. 1, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003) (Stevens, J., concurring). Regarding the use of “person,” the act states: “ ‘person’ may extend and be applied to bodies politic and corporate.” Id. (citing Act of Feb. 25, 1871, § 2, 16 Stat. 431). Unincorporated associations were not persons under the Dictionary Act of 1871.
Conversely, we have stated that the current version of the Dictionary Act applies only prospectively. Lippoldt, 468 F.3d at 1215. Because the use of “person” in § 1153 predates the 1948 enactment of the current Dictionary Act, the definition of “person” in 1 U.S.C. § 1[4] is unpersuasive. Id. at 1214 (“We do not read the current enactment of the Dictionary Act in 1 U.S.C. § 1 to require a contrary result.”). This statutory history implies that our approach does not contradict the Supreme Court’s statement in United States v. A & P Trucking Co., 358 U.S. 121, 123 n. 2, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958):
It is significant that the definition of ‘whoever’ in 1 U.S.C. § 1 was first enacted into law as part of the very same statute which enacted into positive law the revised Criminal Code [Title 18]. 62 Stat. 683, 859 (1948). The connection between 1 U.S.C. § 1 and the Criminal Code, which includes § 835, is thus more than a token one....
Moreover, the inclusion of § 1153(b)[5] demonstrates an example of congressional intent to alter the definitions of terms in the Major Crimes Act of 1885. In contrast, the phrase at issue — “Any Indian who commits against the person or property of another Indian or other person any of the following offenses ... ” — has remained unchanged, and without further clarification, from its original enactment. Following Lippoldt and applying the Dictionary Act of 1871, we conclude that § 1153’s use of “person” applies to living individuals and corporations, but does not apply to unin *1170 corporated associations. 468 F.3d at 1213-15.
c. Response to the dissent
Although the dissent concurs with our conclusion — that § 1153’s use of “person” applies to living individuals and corporations, but not unincorporated associations — the dissent “would reach that result based solely on the plain meaning of the statute’s words in the context in which they are used.” Dissent Op. at 1177. The dissent’s analysis, however, does not negate our reasoning on this issue.
As is the usual approach, the dissent also starts with the statutory language of 18 U.S.C. § 1153(a). The dissent reads this language to be unambiguous and considers our “foray” into legislative history to be inappropriate. Dissent Op. at 1181. In its analysis, however, the dissent presumes the same legislative history that we cite. The dissent likewise applies the Dictionary Act of 1871 and notes that “we look to the version of the Dictionary Act in existence when the statute was enacted.” Dissent Op. at 1180 n. 3. To select the Dictionary Act of 1871 as the defining statute, the dissent must determine when the statute was enacted and whether the language was subsequently altered. Consequently, the dissent’s analysis requires the same information we applied — that Congress first enacted the relevant language in § 1153 in 1885 and that the language has remained unchanged.
Beyond the dissent’s implicit statutory history analysis,[6] the dissent’s characterization of the statutory language as unambiguous is potentially problematic. The dissent reasons that because the “Dictionary Act of 1871 ... makes it clear that ‘person’ includes corporations” “our interpretive task is simplified.... ” Dissent Op. at 1180. As a result, the dissent directly substitutes the definition of person from the Dictionary Act of 1871 for § 1153’s usage of “person.” Under this approach, however, significant questions arise about the other references to “persons” in § 1153 — “Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely ... arson ... within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses .... ” (emphasis added). If the use of “other person” implicated the definition of the Dictionary Act of 1871, then the use of “all other persons” requires the same broad definition. This construction is nonsensical because corporations cannot commit the listed offenses.
The dissent attempts to remedy this confusion by stating, without citation, “The Dictionary Act acknowledges that, in some cases, the ‘context’ may indicate that a different meaning was intended.” Dissent Op. at 1181. This acknowledgment is identical to our logic that the statute is unclear because “the varying usage of ‘person’ ... indicates changing definitions.”
Consequently, to arrive at the dissent’s conclusion — “viewed in its appropriately defined statutory context, which includes the Dictionary Act of 1871, and with reference to the common understanding of the term at the time of the MCA’s enactment, the specific usage of the term ‘person’ at issue here simply is not, in my view, unclear” — requires knowledge of when § 1153 was enacted and reasoning to distinguish this “specific usage” from other references to “persons.” Dissent Op. at 1182. This is the same path of statutory history and contextual ambiguity that we follow.

*1171
2. Sufficiency of the evidence to show corporate mmership of the church

Having determined that the definition of “person” under § 1153 is restricted to living individuals or corporations, we turn to defendants’ argument that there was insufficient evidence to prove beyond a reasonable doubt that the owner of the Ute Mountain Presbyterian Church was a corporation. Defendants argue that the Ute Mountain Presbyterian Church, which is not a living individual or a corporation, was the owner of the church building. In support of this contention, defendants highlight: (1) testimony from witnesses indicating that the Ute Mountain Presbyterian Church was the lessee of the building’s land; (2) the lease in effect at the time of the arson identifying the Ute Mountain Presbyterian Church as the lessee; and (3) a lease agreement for the land renewed days after the arson identifying the Ute Mountain Presbyterian Church as the lessee. Defendants challenge the district court’s conclusion that the Presbytery of Western Colorado was the owner based on the court’s reliance on the signature by an agent of the Presbytery of Western Colorado on the lease in effect at the time of the arson, and the Presbytery of Western Colorado holding an insurance policy on the church building.
While we concede that there is conflicting evidence regarding the ownership of the church building, more is required under the applicable standard of review for us to reverse these convictions.
“We review sufficiency of the evidence challenges de novo to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.” United States v. Flanders, 491 F.3d 1197, 1207 (10th Cir.2007) (citing United States v. Yehling, 456 F.3d 1236, 1240 (10th Cir. 2006)). We do not weigh conflicting evidence or evaluate witness credibility. United States v. Dazey, 403 F.3d 1147, 1159 (10th Cir.2005). Instead, we view the evidence in the light most favorable to the prosecution. Id.
Having reviewed the transcript of the testimony and the submitted evidence, we conclude there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the owner of the burned building was the Presbytery of Western Colorado. While the record contains vague and conflicting statements and contradictory assertions by the prosecution,[7] there is also evidence that the Presbytery of Western Colorado owned the church building. During the first day of S.W.’s trial, Pastor Rousset answered the question “who owns the building?” with the statement, “The Presbyterian — it’s owned by the Presbyterians. It’s Presbyterian Western Colorado.” R. Vol. II at 66. After the trial was reopened, Kim Nofel, a minister for the Presbyterian Church U.S.A., testified that the “Presbytery of Western Colorado maintained insurance on the Ute Mountain Presbyterian Church building.”[8] R. Vol. IV at 33. An *1172 agent for the Presbytery of Western Colorado signed the lease that was in effect at the time of the arson. Pastor Nofel and Gwen Cook, the clerk of the Presbytery of Western Colorado, testified that the Presbytery of Western Colorado was a nonprofit corporation. Id. at 37, 44. Viewing this evidence in the light most favorable to the prosecution, the evidence presented was sufficient to prove beyond a reasonable doubt that the Presbytery of Western Colorado, a nonprofit corporation, owned the burned building.

3. The prosecution’s motions to reopen the cases

A “trial court is vested with wide discretion to permit the reopening of either party’s case.” United States v. Hinderman, 625 F.2d 994, 996 (10th Cir.1980) (citing United States v. Keine, 424 F.2d 39, 40-41 (10th Cir.1970)). A court abuses its discretion “when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable.” United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008) (quotation omitted). In exercising its discretion on a motion to reopen, the district court should be mindful that:
[T]he government’s case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures. But the trial court must be vested with discretion to permit reopening when mere inadvertence or some other compelling circumstance ... justifies a reopening and no substantial prejudice will occur.
Hinderman, 625 F.2d at 996. “Such discretion is not abused where there is no suggestion of surprise, and no further preparation is required to meet the testimony, particularly where a continuance is not requested.” United States v. Alderete, 614 F.2d 726, 727 (10th Cir.1980). This court has also noted that a defendant should not be allowed to abuse a prosecutor’s inadvertence “to gain an unjust result.” United States v. Bolt, 776 F.2d 1463, 1472 (10th Cir.1985) (quotation omitted).
The circumstances surrounding the motions to reopen differ between the trials of R.K. and S.W. During R.K’s trial, the prosecution rested, and then R.K. moved for a judgment of acquittal. After the district court found, “There is no proof.... I think that there ... has been no offense committed because there is an element missing,” the prosecution requested an overnight continuance because it was “caught flatfooted.” R. Vol. IIA at 100-01. The district court then asked if the prosecution wanted to reopen. The prosecution responded, “I would ask to reopen in the morning.” Id. at 101. The following morning, the prosecution moved to reopen. The district court granted the motion “in the interests of justice” and referred to the element of proof relating to a “person” under § 1153 as a “technical element.” R. Supp. Vol. I at 9-10.
During S.W.’s trial, the prosecution rested on February 6, 2008, and then S.W. moved for a judgment of acquittal. S.W. also requested a continuance for further discovery regarding the ownership of the church building, which the district court granted. On March 13, 2008, the prosecution moved to reopen. The district court granted the motion “in the interests of *1173 justice and the truth-finding function.” R. Yol. VI at 10.
In both circumstances, we acknowledge that defendants suffered some degree of prejudice. Defendants were required to adapt to the prosecution’s evolving assertions of which “person” owned the church building. We are not convinced, however, that these facts presented the requisite substantial prejudice to defendants. The district court granted S.W.’s request for a continuance and both trials were halted. There is no suggestion that defendants were surprised. In fact, defendants raised the issue of the church’s ownership and the statutory definition of “person,” which supported the prosecution’s motions to reopen. The prosecution and the defendants received additional time to research the legal and factual aspects of the church’s ownership.
The prosecution’s requests to reopen were due to inadvertence. As we noted before, no prior case clearly sets forth the definition of a “person” under 18 U.S.C. § 1153. In contrast, we have applied § 1153 to arson of a school without discussion of what person owned the school. M.W., 890 F.2d at 239-41. Given this isolated legal history, the prosecutor’s failure to fully consider the definition of “person” and to gather the necessary evidence prior to trial to establish that element does not appear to be deliberate. We conclude the district court did not abuse its “wide discretion” by allowing the prosecution to reopen. Hinderman, 625 F.2d at 996.

Ip. The sufficiency of the information

a. Standard of review

[9-11] We review de novo the sufficiency of an indictment.[9] United States v. Redcom, 528 F.3d 727, 733 (10th Cir.2008). An indictment, or information, is sufficient “if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend, and if it enables a defendant to assert [a double jeopardy defense.]” United States v. Poole, 929 F.2d 1476, 1478 (10th Cir.1991). “[I]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.” Redcorn, 528 F.3d at 733 (citations omitted). “Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need *1174 not go further and allege in detail the factual proof that will be relied upon to support the charges.” Id. (citations omitted).
Here, the superseding information identified the date, place, and which church defendants allegedly burned. This is sufficient to enable defendants to assert a double jeopardy defense should they face subsequent charges. The question is whether, despite omitting any allegation of ownership of the building by a person, the superseding information contains the elements of § 1153. Although the superseding information does not quote the language of § 1153, it states that the conduct described was “in violation of Title 18 U.S.C. Section[ ] ... 1153.” R. Vol. I Doc. 61 at 2. As discussed, § 1153 requires the offense be committed “against the person or property of another Indian or other person.... ”
Whether the identity of the victim must be contained in the indictment was touched upon in United States v. Moore, 198 F.3d 793, 795-96 (10th Cir.1999). In Moore, we addressed a carjacking charge under 18 U.S.C. § 2119, which required the taking of a motor vehicle “from the person or presence of another.” Id. at 796. The indictment identified the victim as the owner of the vehicle. The facts at trial indicated that the vehicle was taken in the presence of the owner’s wife, and not the owner. The district court amended the indictment at the close of evidence to reflect the evidence at trial. We stated in Moore:
As a general rule, an erroneous reference to the victim is not fatal to the indictment. See Dye v. Sacks, 279 F.2d 834 (6th Cir.1960). In the case at hand, the Indictment named the victim as Brent Byers. Brent Byers was the victim’s husband, and was the registered owner of the car. None of the evidence presented at trial suggested that Brent
Byers was present during the bank robbery. Mr. Byers did not testify at trial. However, the victim Anne Byers did testify at trial and was cross examined by the defendant. The defendant argued at trial as a defense that he was not guilty because he did not take the car from the “person or presence of another” and he used the testimony of Anne Byers in support of that argument. At no point during trial was the name of Brent Byers discussed. Where a variance is such that the defendant could not have anticipated from the allegations in the indictment what the evidence would be at trial, the defendant’s Sixth Amendment right to notice of the charges against him is violated. See United States v. Stoner, 98 F.3d 527, 536 (10th Cir.1996) cert. denied, 525 U.S. 961, 119 S.Ct. 403, 142 L.Ed.2d 327 (1998). However, where the defendant was not misled by the variance, his right to adequate notice and substantial rights are not prejudiced in any way. Id. at 536-37. Based upon the record before this court it does not appear that the defendant was prejudiced in any way by the variance to the Indictment. Mr. Moore was aware of the charges against him and presented his defense with the knowledge that Anne Byers was the alleged victim of the crime.
Id. at 796. Just as the defendant in Moore knew which car he was accused of carjacking, the defendants in the present cases knew which church they were accused of burning. Further, the defendants had the opportunity to present a defense to counter the prosecution’s assertions regarding the church’s ownership. See id. (“Mr. Moore ... presented his defense with the knowledge that Anne Byers was the alleged victim of the crime.”).

b. Harmless error

Even if we accept defendants’ contention that the identity of the church’s *1175 owner should have been set forth in the information — although Moore provides that “[a]s a general rule, an erroneous reference to the victim is not fatal to the indictment,” id. — we apply a harmless error standard of review when addressing challenges to the sufficiency of an indictment. United States v. Prentiss, 256 F.3d 971, 981 (10th Cir.2001) (en banc) (“[W]e hold that the failure of an indictment to allege an essential element of a crime ... is subject to harmless error review.”), overruled in part on other grounds by United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). For the error to be harmless, the “omitted elements must be uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.” United States v. Prentiss, 273 F.3d 1277, 1279 (10th Cir. 2001) (alterations omitted). Here, the omitted element was that the crime was committed “against the person or property of another Indian or other person.” 18 U.S.C. § 1153(a). We have no doubt that the judgment would have been the same absent the error.
As discussed, the district court explicitly considered the identity of the church’s owner. The district court found beyond a reasonable doubt that the Presbytery of Western Colorado owned the church. It would be illogical to assume this outcome would have been different if the indictment identified the Presbytery of Western Colorado as the church’s owner. Accordingly, any possible error resulting from the indictment’s omission of the identity of the church’s owner was harmless.
While defendants challenged the question of the church’s ownership by arguing that the prosecution’s evidence was inconclusive, they presented no evidence contesting the church’s ownership. Defendants had a month’s continuance between raising the issue of the church’s ownership and presenting their defense. The only prejudice defendants allege is that the omission of the church’s ownership from the information “enabled the government to switch its theory of the arson victim.” Aplt. Br. at 63. This claimed prejudice does not indicate that the verdict would not have been the same absent the error. Instead, this claim is similar to the situation in Moore, where we found no prejudice to the defendant. 198 F.3d at 796.
c. Response to the dissent
To clarify our application of harmless error review, we briefly respond to issues raised by the dissent. While the dissent agrees that harmless error is the appropriate standard of review for an error in the information, it declines to conduct harmless error review because the government did not address the issue in its briefing or at oral argument. The dissent, however, notes that even if the government fails to raise an argument, the court can sua sponte review for harmless error after considering: (1) the length and complexity of the record; (2) whether the harmlessness of the error is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court. Dissent Op. at 1187-88 (also noting that the most important consideration is whether the certainty of the harmlessness is readily apparent). Because the dissent considers the evidence ambiguous, making the certainty of the harmlessness not readily apparent, the dissent does not consider sua sponte harmless error review appropriate.
The dissent’s reasoning on this issue is flawed for several reasons. First, applying the listed factors for conducting harmless error review supports its present application. The record in this case is not lengthy or complex. The trials for both defendants lasted less than one week. *1176 The certainty of the harmlessness is clear. Reversal would result in futile proceedings. The district court already granted a continuance for further briefing and argument on this issue. The district court explicitly considered evidence on this issue. Moreover, because defendants are juveniles, any future proceedings would have only questionable impact.
Second, although the dissent criticizes the government for not satisfying its burden to show harmless error, defendants have not alleged any error attributable to the insufficiency of the information. The extent of defendants’ argument on this issue is that “this deficiency prejudiced the defendants because it enabled the government to switch its theory of the arson victim.” Aplt. Br. at 63. The proper method to challenge and prevent the prosecution from changing its theory of the case is through a bill of particulars. Sullivan v. United States, 411 F.2d 556, 558 (10th Cir.1969) (“If the accused desired more definite information for the proper preparation of a defense and to avoid prejudicial surprise, the remedy was by motion for a bill of particulars.... ”). A bill of particulars entitles defendants to notice of the government’s theory of the case. United States v. Tyler, 42 Fed. Appx. 186, 190 (10th Cir.2002) (“If the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial, a bill of particulars is not necessary. Significantly, a defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government’s case.”) (internal citation and quotation omitted). If defendants do not file a bill of particulars, they waive the right. Phillips v. United States, 406 F.2d 599, 602 (10th Cir.1969) (noting that defendant “defended his case in the trial court based on the elements of the crime for which he was charged. Therefore[,] we conclude that the indictment adequately advised him of the crime of which he was accused. Also[, defendant] was free to move for a bill of particulars if he was unsure of the charge against him. By failing to do so[,] he has waived the privilege.”).
Here, defendants did not file a bill of particulars and waited for the prosecution to close its case-in-chief before challenging the information. Had defendants acted earlier, the error they now allege would have been avoided. Although the government did not provide a sufficient harmless error argument, defendants provided little at trial or on appeal to which the government could respond.
Third, the dissent omits relevant evidence in its effort to find the harmlessness uncertain. Although we acknowledge that there is conflicting evidence and confusion about the church’s ownership, all of this confusion came from the prosecution. Defendants did not present any evidence challenging the church’s ownership.
Reviewing the record, the dissent focuses on Ms. Nofel’s testimony and the leases for the church’s land. Regarding Ms. Nofel’s testimony, the dissent notes that nothing in her testimony “compels the court’s conclusions.” Dissent Op. at 1189. Regarding the leases for the church’s land, the dissent highlights the ambiguity resulting from the church being the lessee on the lease, but a Presybtery of Western Colorado representative also signing the lease. The dissent also considers the “Book of Order,” for which neither the dissent nor defendants provide a citation in the record.
Absent from this analysis is a discussion of the testimony of Pastor Rousset. Before defendants raised any challenge to the church’s ownership, Pastor Rousset answered the question of “who owns the building?” with the statement, “The Presbyterian — it’s owned by the Presbyterians. *1177 It’s Presbyterian Western Colorado.” R. Yol. II at 66. This statement is not ambiguous. In combination with the lease and insurance document, this statement makes clear that the verdicts against the defendants would have been the same absent the error in the information.
Ill
We affirm the convictions in both cases.

. The findings also included a discussion of the other elements of 18 U.S.C. § 81 and 18 U.S.C. § 1153 that are not at issue here.

. While not directly addressing the definition of "person” under 18 U.S.C. § 1153, other cases arising under the statute have involved victims that were not living individuals. E.g. United States v. M.W., 890 F.2d 239, 239 (10th Cir.1989) (applying § 1153 to a juvenile committing arson involving the “Mill Creek School”); Johnson v. United States, 370 F.2d 495, 496 (9th Cir.1966) (burglary of the "White River Trading Post”); United States v. Cardish, 145 F. 242, 243 (D.C.Wis.1906) (arson of "certain dwelling house[s] of the United States ... known as the ‘Girls' [and Boys'] Building[s] of the Menominee Indian Training School' ” and defining the crime as "arson against the property of another, to wit, of the United States of America”).

. Defendants argue that additional canons of statutory construction, such as construing ambiguous statutes in favor of Native American sovereignty and the rule of lenity, "require that the phrase 'Indian or other person’ be limited to individuals.” Aplt. Br. at 36. Beyond suggesting a "narrow interpretation,” Defendants, however, have not shown how these rules of statutory construction require the phrase "Indian or other person” to exclude non-living entities. Id. In this context, we are more persuaded by the Supreme Court's statutory analysis in Rowland to determine whether "Indian or other person” refers only to living individuals.

. 1 U.S.C. § 1 provides in pertinent part: “the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals....”

. Section 1153(b) provides: Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

. Instead of conducting statutory analysis, the dissent explicitly conducted "case history" analysis. Dissent Op. at 9 (citing cases from 1826 and 1844 for the proposition that "in 1885, it was well established that corporations were treated as persons").

. For example: "The church belongs to the church” and agreements that “the lease itself is in the name of the Ute Mountain Presbyterian Church.” R. Vol. IV at 16, 18; "It is additionally clear that the person’ (the church as an association or society) and the property’ (the church’s building) of that 'person' were injured and/or damaged as a result of the actions of the defendants.” R. Vol. I Doc. 118 at 9; and "the church owned the building through the ... First United Methodist Church.” R. Vol. IIA at 93.

. Defendants argue that evidence related to how the building was insured does not indicate that the Presbytery of Western Colorado owned the building because "[t]he insurer of a piece of property is not necessarily the legal title holder to the property.” Aplt. Br. at 50. Even if we accept this unsupported statement *1172 as true, the evidence regarding insurance was not irrelevant to the question of the building's ownership. See Fed.R.Evid. 401 (defining "relevant evidence” to be "evidence having any tendency to make the existence of any fact that is of consequence ... more probable or less probable than it would be without the evidence”). Under our standard of review for sufficiency of the evidence, we agree with the district court’s statement, "Insurance documents can in some respects be important indicia of who owns a piece of property that is burned or destroyed...." R. Vol. IV at 72.

. Arguably, the standard of review for the sufficiency of the information in this context is not strictly de novo. Defendants did not raise this issue until after the prosecution rested. While a timely-raised objection to the sufficiency of the information merits de novo review, courts are less “hospita[ble]” to challenges to an information later in the proceedings. United States v. Willis, 102 F.3d 1078, 1081 (10th Cir.1996) (“Although we generally review the sufficiency of an indictment de novo, when a defendant fails to raise a timely challenge, we will liberally construe an indictment in favor of validity.”) (internal quotation omitted); United States v. Thompson, 356 F.2d 216, 226-27 (2d Cir.1965) (“[T]he courts of the United States long ago withdrew their hospitality toward technical claims of invalidity of an indictment first raised after trial, absent a clear showing of substantial prejudice to the accused .... ” and listing cases from the Fourth, Ninth, and Eighth Circuits); United States v. Lucas, 932 F.2d 1210, 1218 (8th Cir.1991) (noting that “defendants did not make this challenge to the indictment until after the close of the government’s casein-chief” and "indictments which are tardily challenged are liberally construed in favor of validity”); United States v. De La Pava, 268 F.3d 157, 162 (2d Cir.2001) ("The scrutiny given to an indictment depends, in part, on the timing of a defendant’s objection to that indictment.”). Because we also conclude that even if the information were insufficient, it resulted in only harmless error, we apply de novo review.