FILED
United States Court of Appeals
Tenth Circuit

December 4, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DOMINIC SAAVEDRA,

    Defendant - Appellant.

No. 12-2149
(D.C. No. 1:11-CR-02014-BB-1)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **KELLY, HARTZ,** and **MATHESON,** Circuit Judges.

A federal jury convicted Dominic Saavedra of being a felon in possession of a

firearm, possessing heroin with intent to distribute, and carrying a firearm during a drug

trafficking crime.  Mr. Saavedra challenges his convictions on all counts on the ground

that an electronic scale seized during a traffic stop was the fruit of an unlawful arrest.  He

also challenges his conviction on the first count, being a felon in possession of a firearm

or ammunition, on the ground that there was insufficient evidence to prove that he

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possessed certain ammunition found in his co-defendant's vehicle. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual History*[1]

Around 1:00 a.m. on May 20, 2010, in a high crime area of Albuquerque, New

Mexico, Bernalillo County Deputy Sheriff Josh Hessinger initiated a traffic stop of a

Lexus with a malfunctioning license plate light. Before approaching the Lexus, Deputy

Hessinger noticed two occupants moving around in a manner that made him feel

"uncomfortable with the situation." ROA, Vol. III at 14. He called for assistance, and a

second deputy, Jarod Beasley, arrived. The driver, later identified as Donald Howard,

was "sway[ing] back and forth" and leaning forward "as if he was retrieving something

or placing something under [his] seat." *Id.* The deputies agreed the movements were

both suspicious and raised officer safety concerns.

The deputies approached the vehicle, with Deputy Hessinger on the driver's side

and Deputy Beasley on the passenger's side. Deputy Hessinger asked Mr. Howard to

step outside. As Mr. Howard complied, the deputy asked Mr. Howard why he was

moving around. Mr. Howard replied, "There is nothing in the car." *Id.* at 17. The

---

[1] For both Mr. Saavedra's challenges—the motion to suppress and the sufficiency of the evidence—we view the facts in the light most favorable to the Government. *See United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (we view facts in the Government's favor on a sufficiency of the evidence challenge); *United States v. Perrine*, 518 F.3d 1196, 1201 (10th Cir. 2008) (we view facts in the Government's favor in reviewing the denial of a motion to suppress).

deputy found the statement odd because it was not responsive to his question.  He shined his flashlight through the open door of the car and saw in plain view "a silver colored revolve[r] sticking out from under the driver's seat."  ROA, Vol. I at 155.  Using a police code to indicate a weapon was present, Deputy Hessinger alerted Deputy Beasley to the presence of the handgun.  Deputy Hessinger prepared to handcuff Mr. Howard for officer safety purposes, but Mr. Howard pulled away and began running.  Deputy Hessinger pursued.

Left at the Lexus, Deputy Beasley was aware of the presence of a firearm in the car but not its location.  He decided to detain Mr. Saavedra for officer safety purposes and for further investigation.  At the deputy's request, Mr. Saavedra stepped out of the vehicle.  The deputy did a "pat down" of Mr. Saavedra's person to check for weapons.  Finding no weapons, he handcuffed Mr. Saavedra and placed him in the back of a patrol car.  Deputy Beasley then notified dispatch of Mr. Howard's flight and prepared to assist Deputy Hessinger in the pursuit if necessary.

Deputy Hessinger quickly captured Mr. Howard, secured him in handcuffs, and placed him under arrest for resisting, evading, or obstructing an officer.  Because Mr. Howard, the driver of the Lexus, was being arrested, department policy required the deputies to conduct an inventory search of the vehicle and have it towed.  Although Mr. Saavedra had not been formally arrested, the deputies left him handcuffed in the patrol car during the inventory search.

In addition to the handgun protruding from under the driver's seat, the search

-3-

uncovered three new pieces of evidence: (1) a fully loaded Bryco .380 semiautomatic pistol wedged between the center console and the passenger seat—immediately next to where Mr. Saavedra had been sitting; (2) a tin can on the front passenger side floor containing 41 individually wrapped plastic bags of "a black tar like substance," *id.* at 81, which a field test determined was likely to be heroin;[2] and (3) eight rounds of nine-millimeter ammunition.[3]

Based on the location of the heroin and the second handgun, Deputy Hessinger concluded the items had been in Mr. Saavedra's immediate control, and he instructed Deputy Beasley to arrest Mr. Saavedra. Deputy Beasley removed Mr. Saavedra from the patrol car, placed him under arrest, and conducted a more thorough search of his person. In Mr. Saavedra's right front pants pocket, the deputy found a small black electronic scale of the sort typically used for weighing drugs.

### B. *Procedural History*

On July 27, 2011, a federal grand jury charged Mr. Saavedra with a three-count indictment: (1) being a felon who "knowingly possessed, in and affecting commerce, a firearm, a . . . model Bryco 38, .380 Auto caliber semiautomatic pistol, . . . approximately eight (8) cartridges of Winchester brand 9mm Luger caliber and six (6) cartridges of Remington Peters brand .380 Auto caliber ammunition," in violation of 18 U.S.C.

---

[2] A laboratory test subsequently confirmed the substance was heroin.

[3] It is unclear where in the vehicle the nine-millimeter ammunition was found.

-4-

§§ 922(g)(1) and 924(a)(2), ROA, Vol. I at 12; (2) "knowingly and intentionally possess[ing] with intent to distribute . . . heroin," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), *id.* at 13; and (3) "knowingly carry[ing] and possess[ing] a firearm . . . during and in relation to . . . a drug trafficking crime," in violation of 18 U.S.C. § 924(c), *id.* at 13.

Mr. Saavedra moved to suppress all evidence obtained from the traffic stop. The district court denied the motion, concluding that: (1) Deputy Beasley had reasonably placed Mr. Saavedra in investigative detention to maintain the status quo during the investigation; (2) Deputy Hessinger's inventory search of the Lexus was properly conducted according to the department's policy; (3) the discovery of the handgun and drugs was inevitable from Mr. Howard's arrest and the subsequent inventory search of the Lexus; and (4) the deputies had probable cause to arrest Mr. Saavedra after discovering the firearm and drugs in the Lexus.

A jury found Mr. Saavedra guilty on all counts, and the district court sentenced him to 488 months in prison followed by three years of supervised release.

## II. **DISCUSSION**

On appeal, Mr. Saavedra concedes (1) that Deputy Beasley did not violate the Constitution when the deputy removed him from the Lexus and conducted a pat down search for weapons; (2) the inventory search of the Lexus was valid; (3) the second loaded handgun and the heroin uncovered in the search provided probable cause for his formal arrest. He therefore does not challenge the admission of the firearm and heroin at

trial, and he concedes the evidence was sufficient to support the jury's conclusion that he possessed these two items.[4]

Mr. Saavedra presents two challenges. First, he contends that when Deputy Beasley initially handcuffed him and placed him in the patrol car, this constituted an arrest without probable cause. He argues the electronic scale should have been suppressed as the fruit of this purportedly unlawful arrest, and he asks us to reverse all three convictions and remand to the district court with instructions to dismiss the charges. Second, Mr. Saavedra argues there was insufficient evidence to connect him to the nine-millimeter ammunition. Because Count 1 charged him with possession of the nine millimeter ammunition, as well as the Bryco .380 autocaliber handgun and the .380 caliber ammunition, he argues there was insufficient evidence to support this conviction. We address each challenge in turn.

## A. *The District Court Properly Admitted the Electronic Scale*

Mr. Saavedra contends that when Deputy Beasley first placed him in handcuffs and put him in the squad car, this constituted an unlawful custodial arrest because the deputies lacked probable cause. He argues that the electronic scale must be suppressed as a product of this purportedly unlawful arrest. As we will explain, we do not need to determine whether Mr. Saavedra's detention constituted an arrest because we agree with

---

[4] Our understanding of Mr. Saavedra's challenges and concessions is aided by counsel's clarifications during oral argument. Oral Argument at 02:35-15:00, *United States v. Saavedra*, No. 12-2149 (10th Cir. Nov. 19, 2013).

the district court that the deputies had reasonable suspicion to justify an investigatory detention. This was sufficient to make the electronic scale admissible because it was discovered after he was arrested, following the valid inventory search.

1. **Standard of review**

"In reviewing the denial of a motion to suppress evidence, we accept the factual findings of the district court . . . unless they are clearly erroneous." *United States v. Cervine*, 347 F.3d 865, 868 (10th Cir. 2003); *see also United States v. Perrine*, 518 F.3d 1196, 1201 (10th Cir. 2008); *United States v. Flores*, 48 F.3d 467, 468 (10th Cir. 1995). "We review the evidence in the light most favorable to the finding of the district court and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *Cervine*, 347 F.3d at 868; *Perrine*, 518 F.3d at 1201.

2. **Legal framework**

"[T]he Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative [detentions], and arrests." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (quotations omitted). An encounter is not consensual if "a reasonable person would not feel free to leave or disregard the contact" under the circumstances. *Lundstrom v. Romero*, 616 F.3d 1108, 1119 (10th Cir. 2010). Because both investigative detentions and arrests are nonconsensual, they are seizures for Fourth Amendment purposes and must pass constitutional muster. *See id.; Cortez*, 478 F.3d at 1115.

"While there is no litmus-paper test for determining when an investigative

detention enters the realm of an arrest, we have stated an arrest is distinguished from an investigative detention 'by the involuntary, highly intrusive nature of the encounter.'" *Lundstrom*, 616 F.3d at 1120 (quoting *Cortez*, 478 F.3d at 1115).  An arrest must be supported by probable cause, which exists only when "the facts and circumstances within the officers' knowledge . . . are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."  *Cortez*, 478 F.3d at 1115 (quotations omitted).

In contrast, an investigative detention requires only reasonable suspicion, which exists if the officer has "a particularized and objective basis for suspecting legal wrongdoing."  *Lundstrom*, 616 F.3d at 1120 (quotations omitted).  Reasonable suspicion is a less rigorous standard than probable cause.  Police "need not rule out the possibility of innocent conduct" before conducting an investigatory detention.  *United States v. Arvizu*, 534 U.S. 266, 277 (2002).  "Reasonable suspicion may exist even where it might be more likely than not that the individual is *not* involved in any illegality."  *See United States v. Guardado*, 699 F.3d 1220, 1224 (10th Cir. 2012) (quotations omitted).

When performing an investigative detention, "[a] police officer may take such steps as are reasonably necessary to protect [the officer's] safety and to maintain the status quo during a detention."  *Lundstrom*, 616 F.3d at 1120; *see also United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006).  In particular, "[h]andcuffing may be appropriate during an investigative detention—an investigative detention does not become unreasonable just because officers handcuff an individual."  *Lundstrom*, 616 F.3d

-8-

at 1122; *see also United States v. Neff*, 300 F.3d 1217, 1221 (10th Cir. 2002) ("[T]he use of handcuffs [is] appropriate as long as there [are] reasonable, articulable ground[s] for fearing danger from the suspects.").

3. **Analysis**

This case involves three distinct Fourth Amendment seizures:  first, the initial traffic stop; second, when Mr. Saavedra was handcuffed and placed in the patrol car; and third, his formal arrest.  Mr. Saavedra does not challenge the justification for the initial traffic stop.  And as we indicated above, he concedes that his formal arrest was justified by probable cause.  We are therefore concerned only with the second seizure—his placement in handcuffs and in the patrol car.

The district court concluded that this second seizure was not an arrest but a lawful investigative detention justified by reasonable suspicion.  The Government urges us to affirm on this basis.  Mr. Saavedra contends that this seizure was a full custodial arrest. And he argues that because the deputies did not yet have probable cause, they were obligated to release him altogether.  Had they done so, Mr. Saavedra says he might have left the scene before the inventory search and the deputies would not have discovered the electronic scale.

But even if Deputy Beasley lacked probable cause to arrest him, reasonable suspicion could still justify his detention.  The admissibility of the electronic scale does not turn on whether the second seizure was an arrest or an investigative detention.  The scale is admissible so long as the deputies (1) had justification to prevent him from

leaving the scene, and (2) ultimately had justification to search his person. First, the deputies had reasonable suspicion to conduct an investigatory detention for the time period between Mr. Howard's flight and the inventory search. Second, the inventory search provided justification to arrest and search Mr. Saavedra. Deputy Beasley therefore had sufficient reasonable suspicion to detain Mr. Saavedra until the inventory search provided probable cause to formally arrest him, search him, and discover the scale.

To detain Mr. Saavedra during the relevant time period, the deputies needed "a particularized and objective basis for suspecting [Mr. Saavedra] of criminal activity," even if the basis for suspicion fell short of probable cause. *Cortez*, 478 F.3d at 1115 (quotations omitted). The deputies could also have detained Mr. Saavedra if they had reasonable, articulable grounds to believe it was necessary to "protect [their] safety and to maintain the status quo." *Lundstrom*, 616 F.3d at 1120. The facts of this case satisfy both conditions.

First, Mr. Howard's actions gave the deputies reasonable grounds to suspect that "criminal activity may [have been] afoot." *Cortez*, 478 F.3d at 1115 (quotations omitted). They saw Mr. Howard making furtive movements that seemed to indicate he was hiding something under his seat. Mr. Howard responded evasively when asked about his movements and tried to mislead the deputies about the handgun under his seat. When his misdirection failed, he fled from the deputies—a criminal act. Mr. Saavedra correctly notes that his mere presence in a vehicle with a suspected criminal cannot establish probable cause. *See Henry v. United States*, 361 U.S. 98, 103 (1959). But he is

-10-

mistaken in suggesting that it is also insufficient to establish reasonable suspicion. Under the facts of this case, Deputy Beasley had "a particularized and objective basis for suspecting" that Mr. Saavedra may have been involved in "legal wrongdoing" with Mr. Howard. *Lundstrom*, 616 F.3d at 1120; *see also Arvizu*, 534 U.S. at 277 (Police "need not rule out the possibility of innocent conduct" to detain a suspect for investigation.).

Second, Deputy Beasley "had reasonable articulable grounds to believe" that detaining Mr. Saavedra was "necessary to protect [the deputies'] safety and to maintain the status quo." *Lundstrom*, 616 F.3d at 1120. At the time Deputy Beasley handcuffed Mr. Saavedra, he knew there was at least one firearm inside the Lexus, but he did not know its precise location. He reasonably suspected that Mr. Saavedra's companion had attempted to hide something from the deputies before fleeing. Under these facts, Deputy Beasley had reason to detain Mr. Saavedra to eliminate the possibility he would access a weapon from inside the vehicle, attempt to disturb or destroy potential evidence, or otherwise interfere with the deputies' investigation.

Mr. Saavedra agrees it was reasonable to remove him from the vehicle as a safety precaution. But he argues that the deputies should have given him the option of leaving the scene. He offers no authority for this proposition, and we do not find it persuasive. The deputies were investigating suspicious circumstances in which at least one weapon was present, and they reasonably concluded that detaining Mr. Saavedra was "necessary to protect [their] safety and to maintain the status quo" while they investigated to determine whether he posed a threat. *Id*.

-11-

In short, the deputies had reasonable suspicion to detain Mr. Saavedra at the time

Mr. Howard fled and until the Lexus inventory search uncovered the second handgun and

the heroin. After a lawful detention, a valid inventory search, and a lawful arrest, the

deputies discovered the electronic scale pursuant to a valid search incident to arrest.

*Arizona v. Gant*, 556 U.S. 332, 339 (2009) ("[A] search incident to arrest may . . . include

the arrestee's person and the area within his immediate control." (quotations omitted)).

We therefore affirm the district court's decision to admit the electronic scale as evidence

against Mr. Saavedra.

B. ***Sufficient Evidence Supported Mr. Saavedra's Conviction on Count 1***

Mr. Saavedra contends that the evidence at trial was insufficient to convict him of

Count 1 because the Government failed to prove that he possessed one of the two types of

ammunition found in the Lexus. As we explain below, even if Mr. Saavedra is correct

about insufficient proof that he possessed one type of ammunition, there was ample proof

to support his Count 1 conviction.

1. **Standard of Review**

"We review the sufficiency of the evidence to support a conviction . . . de novo."

*United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (quotations omitted). "We

take the evidence—both direct and circumstantial, and reasonable inferences drawn from

that evidence—in the light most favorable to the government and ask only whether a

reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.*

(quotations omitted); *see also United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011);

*United States v. Flanders*, 491 F.3d 1197, 1207 (10th Cir. 2007). "[W]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury, nor will we examine the evidence in bits and pieces." *United States v. Irving*, 665 F.3d 1184, 1193 (10th Cir. 2011) (quotations omitted). "Instead, we view the evidence in the light most favorable to the prosecution." *United States v. Doe*, 572 F.3d 1162, 1171 (10th Cir. 2009); *see also Irving*, 665 F.3d at 1193; *United States v. Jameson*, 478 F.3d 1204, 1208 (10th Cir. 2007).

2. **Legal framework**

Count 1 of the indictment charged Mr. Saavedra with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm *or* ammunition." *Id.* (emphasis added). Section 924(a)(2) sets the punishment for violation of § 922(g)(1) at "not more than 10 years" of imprisonment. The indictment charged Mr. Saavedra with possession of the Bryco .380 handgun, the .380 caliber ammunition, *and* nine-millimeter ammunition found in the Lexus.

"[T]o obtain a conviction . . . under § 922(g), the government was required to prove that" Mr. Saavedra (1) "had previously been convicted of a felony," that (2) "he thereafter knowingly possessed" a firearm *or* ammunition, and that (3) "such possession was in or affected interstate commerce." *United States v. Michel*, 446 F.3d 1122, 1128 (10th Cir. 2006); *see also United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997).

-13-

Mr. Saavedra does not challenge the Government's proof on the first or third elements—his prior felony conviction or the interstate commerce requirement. We are therefore concerned only with whether the Government proved that he "knowingly possessed" a firearm or ammunition.

Because the statute defines the crime disjunctively, a felon violates the statute if he or she knowingly possesses "any firearm *or* ammunition" that was in or affected interstate commerce. 18 U.S.C. § 922(g)(1) (emphasis added). When a crime is defined disjunctively in the statute, the Government may obtain a conviction by proving "any one of the allegations"—even if the indictment charges in the conjunctive, as it did in Mr. Saavedra's case. *See United States v. Pauldino*, 443 F.2d 1108, 1112 (10th Cir. 1971); *see also United States v. Lott*, 310 F.3d 1231, 1246 (10th Cir. 2002) ("[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." (quoting *United States v. Powell*, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000))).

"Possession can either be actual or constructive." *Michel*, 446 F.3d at 1128. Constructive possession exists when a person "knowingly holds the power and ability to exercise dominion and control over" the object. *United States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004) (quotations omitted). To prove constructive possession, the Government "must present 'evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.'" *Michel*, 446 F.3d at 1128 (quoting *United States v. Mills*, 29 F.3d 545, 550 (10th Cir. 1994)).

3. **Analysis**

The indictment charged that Mr. Saavedra was a felon and had knowingly possessed the Bryco .380 autocaliber handgun and two types of ammunition—six cartridges of .380 auto caliber ammunition and eight cartridges of nine-millimeter Luger caliber ammunition. ROA, Vol. I at 12-13.

Mr. Saavedra concedes that the evidence was sufficient to show that he possessed the Bryco .380 handgun, which was found immediately beside the passenger seat where he had been sitting, and the .380 auto caliber ammunition, which fit the Bryco handgun.[5] But he argues that the evidence was not sufficient to prove that he possessed the nine-millimeter Luger caliber ammunition. Mr. Saavedra points to the Government's failure to establish where in the vehicle the nine-millimeter ammunition was discovered, and he notes that the nine-millimeter ammunition did not match his Bryco handgun or the handgun found under Mr. Howard's driver's seat.

Even if Mr. Saavedra were right that the Government did not prove he possessed the nine-millimeter ammunition, this would not entitle him to relief. "It is settled that where a crime denounced disjunctively in the statute is charged in the conjunctive, proof of any one of the allegations will sustain a conviction." *Pauldino*, 443 F.2d at 1112; *see*

_____

[5] Mr. Saavedra's opening brief seems to argue there was insufficient evidence to show possession of the handgun and all ammunition. *See* Aplt. Opening Br. at 16-17. The Government understood this as a challenge to Counts 1 and 3. Aplee. Br. at 16. At oral argument, Mr. Saavedra's counsel clarified that his sufficiency challenge is directed only to the 9mm Luger caliber ammunition. Oral Argument at 14:15-15:00, *United States v. Saavedra*, No. 12-2149 (10th Cir. Nov. 19, 2013).

*also Lott*, 310 F.3d at 1246; *Powell*, 226 F.3d at 1192 n.4. 18 U.S.C. § 922(g)(1) defines the crime of being a felon in possession of a handgun in the disjunctive—it forbids any person who has been convicted of a felony from possessing "any firearm *or* ammunition." *Id.* (emphasis added). As Mr. Saavedra acknowledges, the evidence was sufficient to establish his possession of the Bryco .380 handgun. This is enough to satisfy the statutory element at issue and to convict him on Count 1.

### III. **CONCLUSION**

For the forgoing reasons, we affirm Mr. Saavedra's conviction.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge