The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 17, 2019

## 2019COA156

## No. 17CA2134, *People v. Harmon* — Constitutional Law — Fourth Amendment — Searches and Seizures — Motor Vehicles

A division of the court of appeals concludes that *Brendlin v. California*, 551 U.S. 249, 263 (2007), abrogated only the holding in *People v. Fines*, 127 P.3d 79, 81 (Colo. 2006), that passengers in a lawfully stopped vehicle are not seized for Fourth Amendment purposes as a result of the traffic stop alone.  The division also concludes, however, that *Brendlin* did not further abrogate *Fines*. Thus, it is still good law that there may be instances when an officer effects a Fourth Amendment seizure beyond the initial traffic stop by separating a passenger from the car and the car's other occupants and questioning the passenger about matters unrelated to the traffic stop.

COLORADO COURT OF APPEALS                                    **2019COA156**

_____

Court of Appeals No. 17CA2134
Mesa County District Court No. 16CR6299
Honorable Valerie J. Robison, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sarah Jean Harmon,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BERGER
Welling and Martinez*, JJ., concur

Announced October 17, 2019

_____

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Is a passenger in a vehicle that is lawfully stopped for a traffic infraction seized within the meaning of the Fourth Amendment?

¶ 2    In *People v. Fines*, 127 P.3d 79, 81 (Colo. 2006), and *People v. Jackson*, 39 P.3d 1174, 1185 (Colo. 2002), the Colorado Supreme Court held that such a passenger is *not* seized when the vehicle is lawfully stopped.  But after these opinions were announced, the United States Supreme Court reached a different conclusion.  In *Brendlin v. California*, 551 U.S. 249, 263 (2007), the Supreme Court held that a passenger in a car is "seized from the moment [the] car c[o]me[s] to a halt on the side of the road."

¶ 3    The Colorado Supreme Court has recognized that *Brendlin* overruled or abrogated the contrary Fourth Amendment holding in *Jackson* but has not explicitly done the same with respect to *Fines*. *Tate v. People*, 2012 CO 75, ¶ 8; *People v. Marujo*, 192 P.3d 1003, 1006 (Colo. 2008).  We conclude that *Brendlin* also abrogated the contrary holding in *Fines*, as *Fines* is expressly predicated on *Jackson*.[1]

---

[1] Ordinarily, of course, we are bound by holdings of the Colorado Supreme Court and must follow those holdings unless and until they are overruled by that court.  *In re Estate of Ramstetter*, 2016 COA 81, ¶ 40.  But when, as here, the United States Supreme

¶ 4    The continued viability of *Fines* matters in this case because defendant, Sarah Jean Harmon, was a passenger in a vehicle that was lawfully stopped by the police.  Under the Supreme Court's holding in *Brendlin*, because the traffic stop was lawful, Harmon was seized "from the moment [the] car came to a halt."  551 U.S. at 263.  Because it is uncontested that the stop was lawful under the Fourth Amendment, there was no basis to suppress the fruits of the seizure unless some other unconstitutional seizure was effected by the police.[2]

¶ 5    Recognizing this problem, Harmon contends that when the police directed her to a spot away from the car, separating her from the driver and the other passenger, a separate Fourth Amendment seizure occurred.  She argues that because that seizure was

---

Court decides a question of federal constitutional law, that decision constitutes the supreme law of the land, and we must follow it notwithstanding contrary Colorado Supreme Court precedent. *People v. Schaufele*, 2014 CO 43, ¶ 33.

[2] Harmon does not contend that article II, section 7 of the Colorado Constitution affords her more protection than the Fourth Amendment to the United States Constitution.  The two provisions are "generally co-extensive." *People v. Stock*, 2017 CO 80, ¶ 14.  We treat them as co-extensive here.

supported by neither probable cause nor reasonable suspicion, all fruits of that seizure must be suppressed.

¶ 6     We reject Harmon's argument not because it is legally unsound under the facts she posits, but because those alleged facts are not supported by the record. Because there was no separate seizure, there was no basis to suppress the fruits of the seizure, and the trial court correctly denied Harmon's motion to suppress.[3] We also reject Harmon's other claims of error and affirm the judgment of conviction.

## I.  Background

¶ 7     While on patrol, a police officer drove past a vehicle with a cracked windshield and a broken headlight. The officer followed the car and saw that it also had an expired license plate. The officer initiated a traffic stop, and the car stopped in or adjacent to an alley

---

[3] In a separate order, the trial court ruled that the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966), did not bar admission of Harmon's statement that she had a "hot rail tube" in her purse or her explanation of what that term meant, namely, drug paraphernalia. In the same order, the trial court suppressed on *Miranda* and Fifth Amendment grounds a separate inculpatory statement made by Harmon after the search of her purse. Neither party appealed that order. Therefore, those rulings are not before us.

on the side of the roadway.  During the stop, the officer recognized Harmon, who was one of the passengers, from previous law enforcement contacts involving illegal drugs.  After collecting the driver's registration, license, and insurance information, the officer began filling out a citation.  The officer simultaneously called for a canine unit to conduct a drug sniff of the exterior of the vehicle.

¶ 8      When the canine unit arrived, the officer directed the occupants of the car to get out of the vehicle while the dog performed the sniff.  The passengers got out of the car and remained nearby.  According to the officer, he directed Harmon to a spot five to ten feet behind the car.  He stood with Harmon there, while the driver and a second passenger stood some distance away with the other officer.

¶ 9      The officer standing with Harmon "asked all [of the] occupants if they had any guns, knives, drugs, [or] drug paraphernalia on them."  Because the officer had known Harmon to have needles on her person during their previous encounters, and in anticipation of asking for consent to search her, he specifically asked Harmon what was in her purse.  She answered that she had a "hot rail

tube," which she explained was an item used to snort methamphetamine.

¶ 10    Meanwhile, the dog alerted to the odor of a controlled substance in the vehicle, but a search of the vehicle turned up nothing. The traffic officer then searched Harmon's purse based on her admission about the hot rail tube. Inside her purse, the officer found the hot rail tube and a plastic container containing a Xanax pill and methamphetamine.

¶ 11    Before trial, Harmon sought to suppress the evidence found in her purse. She conceded that the traffic stop was lawful and that the officer was entitled to order her to get out of the vehicle. She asserted, however, that the patrol officer violated her constitutional right to be free from unreasonable seizure when he "separated her" from the other occupants of the car and asked her about the contents of her purse. In particular, she argued that these actions elevated the initial encounter to a "*Terry* stop" that was unsupported by reasonable suspicion.[4]

---

[4] "Under *Terry*, a police officer can briefly stop a suspicious person and make reasonable inquiries to confirm or dispel his suspicions." *People v. Corpany*, 859 P.2d 865, 868 (Colo. 1993) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)). "The officer may also conduct a

5

¶ 12    After a hearing, the trial court denied Harmon's motion, determining that (1) the traffic stop was not unreasonably prolonged and (2) the search of Harmon's purse was supported by "specific and articulable facts." The court did not specifically rule on Harmon's argument that her alleged separation from her companions constituted a separate, unconstitutional seizure.

## II.  Discussion

¶ 13    On appeal, Harmon contends that the patrol officer violated her right against unreasonable seizure "when, lacking any reasonable suspicion, he secluded her in [an] alley and interrogated her about drugs." We disagree.

### A.  Preservation and Standard of Review

¶ 14    The Attorney General asserts that Harmon's claim is "unpreserved" because the trial court did not specifically address it in denying her suppression motion. In contrast to the cases relied on by the Attorney General, however, Harmon sought and received a ruling on the matter she urged — namely, the suppression of

---

pat-down search of the individual to determine whether the person is carrying a weapon, as long as the officer is justified in believing that the person may be armed and presently dangerous." *Id.* at 868-69.

6

evidence.[5] *People v. Boulden*, 2016 COA 109, ¶ 5. That the trial court did not analyze her motion in the way she presented it does not mean that she failed to preserve the issue.

¶ 15 We review a trial court's decision on a motion to suppress as a mixed question of fact and law. *People v. King*, 16 P.3d 807, 812 (Colo. 2001). While we defer to the trial court's findings of historical fact when they are supported by competent evidence in the record, we review conclusions of law de novo. *Id.*

### B. Analysis

¶ 16 The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution protect persons and their homes from unreasonable searches and seizures. *People v. Mendoza-Balderama*, 981 P.2d 150, 156 (Colo. 1999).

---

[5] In *Feldstein v. People*, 159 Colo. 107, 111, 410 P.2d 188, 191 (1966), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266 (Colo. 1987), relied upon by the Attorney General, the court held that the defendant failed to preserve an issue where the court and counsel "completely forgot about [a] request concerning the transcription of oral arguments to the jury" and the court never ruled on the request. In *People v. Zamora*, 220 P.3d 996, 1001 (Colo. App. 2009), also relied on by the Attorney General, the division refrained from reaching the defendant's appellate contentions because they were not raised in the trial court.

¶ 17 A person is seized "when an officer, by means of physical force or show of authority, terminates or restrains his [or her] freedom of movement through means intentionally applied." *Tate*, ¶ 7 (citing *Brendlin*, 551 U.S. at 254). A traffic stop effectuates a seizure not only of the driver, but also his passengers, for the duration of the stop. *Brendlin*, 551 U.S. at 255, 257.

¶ 18 At a suppression hearing, a defendant has the burden of presenting evidence of an unconstitutional seizure. *People v. Cunningham*, 2013 CO 71, ¶ 14; *Outlaw v. People*, 17 P.3d 150, 155 (Colo. 2001). The defendant must show that (1) a Fourth Amendment seizure occurred and (2) the seizure was unconstitutional. *Outlaw*, 17 P.3d at 155.

¶ 19 Harmon concedes that, as a passenger in the vehicle, she was lawfully seized by the traffic stop. Likewise, she does not dispute that she could be ordered out of the car during the traffic stop. Rather, she argues that her seizure became unconstitutional when the police officer "brought her to an alley alone" to "interrogate her about drugs." That is, she asserts, the officer's actions of "abandoning the vehicle, the driver, and the other passengers to

8

move [her] to the alley for an interrogation based on a hunch she might have drugs" effectuated a separate, unlawful seizure.

¶ 20     To support this contention, Harmon relies on *Fines*, 127 P.3d 79. In *Fines*, police recognized the defendant during a traffic stop as "a drug user who had been in and out of jail." *Id.* at 80. Police asked her to step out of the car, "escorted [her] to a particular location behind the stopped vehicle and in front of the first of two police cars, with overhead lights on," and "questioned her about drug activity." *Id.* The court concluded that, while the defendant was not subject to seizure as a result of the traffic stop, she was unconstitutionally seized when she was "directed by the police to a particular location, separated from the driver, and questioned about her own possession of illegal drugs" without any particularized suspicion. *Id.* at 81.

¶ 21     However, *Fines* predates *Brendlin* and *Arizona v. Johnson*, 555 U.S. 323 (2009), which together hold that for Fourth Amendment purposes a passenger is seized from the moment the vehicle stops, *Brendlin*, 551 U.S. at 263, until "the police have no further need to control the scene, and inform the driver and passengers they are free to leave," *Johnson*, 555 U.S. at 333. Thus, *Brendlin* abrogated

9

*Fines'* holding that passengers in a lawfully stopped vehicle are not seized as a result of the traffic stop alone.

¶ 22    *Brendlin*, however, did not abrogate *Fines'* related holding that, under certain circumstances, separating a passenger in a vehicle from the vehicle's other occupants during a traffic stop and questioning that passenger about matters not related to the traffic stop "after [the passenger's] removal from the stopped vehicle" can constitute a Fourth Amendment seizure.  *Fines*, 127 P.3d at 81.

¶ 23    For safety purposes, police may order the occupants of a stopped vehicle to get out of the vehicle, *Maryland v. Wilson*, 519 U.S. 408, 413, 415 (1997), or may order them to remain in the vehicle with their hands up, *United States v. Moorefield*, 111 F.3d 10, 11 (3d Cir. 1997), without effecting a secondary seizure. Similarly, police may subject drivers and passengers to questioning (subject, of course, to the Fifth Amendment rights of the persons questioned) not related to the purpose of the stop so long as the questioning does not measurably extend the stop.  *Johnson*, 555 U.S. at 333.  However, police may only conduct a pat-down of a person during a traffic stop if they "have an articulable and objectively reasonable belief that [the] person in the car may be

10

armed and dangerous." *People v. Brant*, 252 P.3d 459, 462 (Colo. 2011).

¶ 24    In short, police may constitutionally exert some level of control over the driver and passengers in a lawfully stopped vehicle under the justification for the stop, but beyond a certain point, police action may constitute a second, distinct Fourth Amendment seizure.  For instance, in *United States v. Saavedra*, 549 F. App'x 739, 743 (10th Cir. 2013), police handcuffed a passenger and placed him in the back of a police car during a traffic stop; this constituted a second, distinct seizure.

¶ 25    It follows that there may be instances when an officer effects a secondary seizure beyond the initial traffic stop by separating a passenger from the car and the car's other occupants and questioning the passenger about matters unrelated to the traffic stop.  *Fines*, 127 P.3d at 81.  But that is not the case here.

¶ 26    Harmon's characterization of the officer's actions as taking, moving, isolating, or secluding her in an alley away from her companions is not supported by the record.  As noted, the vehicle in which Harmon was a passenger stopped in or adjacent to the alley, and everyone remained nearby during the stop.  According to the

officer's hearing testimony, which was unrebutted, Harmon was within five to ten feet of the vehicle at all times. Though the officer testified that Harmon's companions stood with another officer separated from Harmon, Harmon did not elicit any testimony about, or otherwise challenge, the distance between her and her companions.

¶ 27 Harmon further contends that her physical separation from the other passengers constituted a separate seizure because, like the defendant in *Fines*, she reasonably believed she had to follow the officer's instruction to "step over here." However, since *Fines*, the United States Supreme Court has recognized that the circumstances of a stop itself communicate to reasonable passengers that they are not "free to leave, or to terminate the . . . encounter any other way, without advance permission." *Brendlin*, 551 U.S. at 258.

¶ 28 By extension, the nature of an ongoing traffic stop would communicate to a reasonable passenger in Harmon's position that she was not free to disregard the officer's instruction as to where to stand during the stop. So, under these circumstances, Harmon's reasonable belief that she was not free to ignore the instruction was

the result of the ongoing lawful seizure and is not, standing alone, sufficient to demonstrate that a secondary seizure occurred.

¶ 29    Actions that would themselves support the conclusion that a seizure occurred could, in instances when a lawful seizure is already underway, be simply incidental to the lawful seizure. Under these circumstances, the officer's direction to "step over here," regardless of its subjective motivation, was merely incidental to the ongoing lawful seizure.

¶ 30    Accordingly, Harmon has not demonstrated that her physical separation from the other occupants of the vehicle rises to the level of a separate seizure. *Cunningham*, ¶ 14; *Outlaw*, 17 P.3d at 155.

¶ 31    Finally, the officer's questions about drugs, weapons, and the contents of Harmon's purse did not render the ongoing seizure unlawful or constitute a separate seizure.[6] "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the

---

[6] Harmon makes no contention on appeal that the officer asked these questions while she was in custody, so her responses do not implicate her rights under the Fifth Amendment and *Miranda*, 384 U.S. 436.

duration of the stop." *Johnson,* 555 U.S. at 333. In this case, there is no evidence that the officer's questions of Harmon prolonged the traffic stop. The record reflects that the officer asked the group if anyone had weapons or drugs and asked Harmon what was in her purse shortly after all of the occupants of the car got out so the dog could perform its sniff. Accordingly, the record does not permit a conclusion that the officer's questions measurably extended the stop. Nor did the officer's "brief off-topic questions . . . transform the traffic stop into a seizure of unreasonable duration." *People v. Chavez-Barragan,* 2016 CO 66, ¶ 26.

¶ 32     For these reasons, we conclude that the record does not support Harmon's allegations that a secondary seizure occurred beyond the one already in effect as a result of the traffic stop. Because the police conduct did not violate Harmon's Fourth Amendment rights, the trial court correctly denied her motion to suppress.

### III. Other Issues

¶ 33     Harmon also contends that reversal is required because the trial court (1) clearly erred in finding that the dog alerted to her rather than the vehicle and (2) "analyzed the wrong Fourth

Amendment event" — namely, the search of her purse. We agree that the record does not support a finding that the dog directly alerted to Harmon. However, neither this erroneous finding nor the court's analysis of the lawfulness of the search of her purse affects our analysis on appeal. Accordingly, reversal is not warranted on these bases.

## IV. Conclusion

¶ 34 The judgment of conviction is affirmed.

JUDGE WELLING and JUSTICE MARTINEZ concur.