20CA1298 Peo v Andrew 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1298 Larimer County District Court No. 18CR1524 Honorable C. Michelle Brinegar, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Davis Andrew, Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE SCHUTZ Fox and Graham*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.
1 ¶ 1 Defendant, Davis Andrew, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted first degree extreme indifference murder, first degree assault causing serious bodily injury with a deadly weapon, and first degree burglary. We affirm. I. Background ¶ 2 Viewed in the light most favorable to the People, the evidence produced at trial established the following facts. Andrew and three other men drove to an apartment complex intending to rob M.C. at gunpoint. Andrew remained in the car and drove around the vicinity while the other men knocked on the door of the top floor apartment where M.C.’s girlfriend lived. As M.C. unlocked the deadbolt, one man kicked the door in. M.C. pushed against the door, preventing the intruders from fully entering the apartment, and yelled to his girlfriend to call the police. ¶ 3 The men fired three shots into the apartment, from two different guns, before leaving the scene. One bullet struck M.C. in the knee, shattering the end of his femur. A second bullet went into an interior wall, and a third bullet hit the ceiling. Another shot was fired toward the building from the base of the stairwell as the men 
2 fled to Andrew’s vehicle. Andrew then drove the men to his apartment. ¶ 4 Police identified two of the gunmen — Deshawn Watson and Demontrae Wilson — and connected them to Andrew. As relevant here, the People charged Andrew with attempted extreme indifference murder, first degree assault, and first-degree burglary under a complicity theory. At trial, the prosecution presented evidence that in addition to being the getaway driver, Andrew had played a significant role in planning the crime. ¶ 5 At the close of the prosecution’s evidence, defense counsel moved for a judgment of acquittal on all counts, arguing that the evidence was insufficient to prove that Andrew had a culpable mental state under a complicity theory. The district court denied the motion, and the jury found Andrew guilty on all counts. Andrew thereafter moved for a new trial, arguing the guilty verdicts for first degree assault and attempted extreme indifference murder were legally inconsistent. The court denied this motion as well. On appeal, Andrew contends the court’s rulings were erroneous. 
3 II. Motion for Judgment of Acquittal ¶ 6 Andrew first contends the district court should have granted his motion for acquittal as to the charges of attempted extreme indifference murder and first degree assault because there was insufficient evidence he was legally accountable for the shootings as a complicitor. We disagree. A. Standard of Review ¶ 7 We review the denial of a motion for judgment of acquittal de novo. Montes-Rodriguez v. People, 241 P.3d 924, 927 (Colo. 2010). To determine whether the prosecution presented sufficient evidence to sustain a conviction, we consider whether “the relevant evidence, both direct and circumstantial, when viewed as a whole in the light most favorable to the prosecution, is . . . substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” People v. Lehnert, 163 P.3d 1111, 1115 (Colo. 2007). In doing so, we give the prosecution the benefit of all reasonable inferences supported by a logical connection between the facts established and the conclusion inferred. People v. Donald, 2020 CO 24, ¶ 19. 
4 B. Applicable Law ¶ 8 To support guilty verdicts under a complicity theory, the prosecution must prove that the defendant is legally accountable for the behavior of another person and that the other person committed the crimes charged. § 18-1-603, C.R.S. 2021; see also People v. Childress, 2015 CO 65M, ¶ 34. Andrew does not dispute that the gunmen committed the crimes charged. ¶ 9 “A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603. ¶ 10 Evidence is sufficient to prove a defendant’s complicity in attempted extreme indifference murder if it shows that (1) “the defendant was legally accountable for the behavior of another actor,” and (2) “either the defendant or the other actor engaged in conduct strongly corroborative of the firmness of his purpose to complete the commission of the crime of extreme indifference murder.” Montoya v. People, 2017 CO 40, ¶ 18. A person engages in conduct strongly corroborative of the firmness of his purpose to 
5 complete the commission of the crime of extreme indifference murder if (1) under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, (2) he knowingly engages in conduct which creates a grave risk of death to a person other than himself. § 18-3-
102(1)(d), C.R.S. 2021; see Montoya, ¶ 17; see also § 18-2-101(1), C.R.S. 2021 (defining criminal attempt). ¶ 11 A person commits first degree assault if, as relevant here, (1) with intent to cause serious bodily injury to another person, (2) he causes serious bodily injury to any person (3) by means of a deadly weapon. § 18-3-202, C.R.S. 2021. C. Evidence ¶ 12 The prosecution presented the following relevant evidence: • M.C. testified that he and Andrew knew each other because they had worked together at a landscaping job for a few months. • Facebook messages between Andrew and Watson in the two days leading up to the crime indicated, in slang terms, that (1) they were planning robberies; (2) Andrew had selected and “scoped” a robbery target, a “big one,” 
6 for the day of the shooting; and (3) Andrew told Watson to bring a gun. • Telephone records showed that Andrew and Wilson had communicated about thirty-nine times in the ten weeks surrounding the date of the crime. • GPS data and video surveillance showed that (1) Watson and Wilson had traveled from Colorado Springs to Fort Collins shortly before the crime; (2) Andrew, Watson, and Wilson had left Andrew’s Fort Collins apartment and had been at or near M.C.’s girlfriend’s apartment during the crime; (3) all three had returned to Andrew’s apartment after the crime; and (4) Wilson and Watson had returned to Colorado Springs that night. • Police found Watson carrying a weapon that had been used at the apartment shooting. • A jailhouse informant testified that Andrew had (1) confessed to having played a role in the crime, (2) identified M.C. as a cocaine dealer, and (3) asked the informant to find out M.C.’s address. 
7 D. Discussion ¶ 13 Andrew argues this case presents a fact pattern similar to People v. Duran, in which a division of this court concluded that “[m]erely driving persons to [a] party, being present there, and being associated with [a shooter] are insufficient to support a determination of complicity.” 272 P.3d 1084, 1092 (Colo. App. 2011). However, the evidence related to the crime vacated in Duran is readily distinguishable from the facts presented here. ¶ 14 In Duran, the defendant drove some friends, including the shooter, to a party hosted by a teenager whose parents were out of town. 272 P.2d at 1089. At some point during the party, the shooter had a confrontation with one of the host’s friends. Id. at 1090. The shooter pulled a gun, causing a chaotic scene in which the partygoers fled the house. Id. As he exited the house, the shooter fired a series of shots. Id. One of those shots hit a partygoer who had not been involved in the confrontation, causing her death. Id. The shooter and Duran fled the scene in Duran’s car. Id. There was no evidence to suggest that Duran knew the victim or in any way planned to confront her or any other person at the party. 
8 ¶ 15 In contrast to the facts at issue in Duran, the evidence here shows that Andrew played a central role in selecting the victim; aided, abetted, and advised the gunmen in the planning of the crime; and participated in executing that plan. He was not merely a driver. Indeed, Andrew concedes the jury could reasonably infer that he was complicit in first degree burglary. He argues only that the jury could not infer that he was complicit in the shooting. We disagree. ¶ 16 Andrew instructed Watson to bring a gun to the robbery. Andrew also knew the victim, lived in the same city, and drove three men with guns to where the victim — who he believed to be a drug dealer — was staying. The gunmen kicked in the door and started shooting before they entered the apartment. Although Andrew did not shoot, direct and circumstantial evidence shows that he advised and encouraged the use of guns in the commission of the robbery. Moreover, the jury could reasonably infer that Andrew had expected M.C. to put up a fight and knew that the gunmen may need to shoot. ¶ 17 The jury could also reasonably infer that Andrew knew M.C. was not alone in his girlfriend’s apartment. In fact, M.C.’s girlfriend 
9 and their young daughter were at home when the crime occurred. The three bullets fired into the apartment certainly created a grave risk of death. See People v. Jefferson, 748 P.2d 1223, 1227 (Colo. 1988) (firing shots into a home known to be occupied is an example of conduct manifesting extreme indifference to the value of human life generally). ¶ 18 Because there is substantial evidence that Andrew orchestrated the crime, he is legally accountable for his three partners’ actions. The jury could reasonably infer that the gunmen intended to cause serious bodily injury when they shot M.C. in the knee and that the gunmen knowingly fired their weapons into the apartment, creating a grave risk of death. Thus, the evidence is sufficient to sustain Andrew’s guilty verdicts for complicity in first degree assault and attempted extreme indifference murder. See Montoya, ¶ 18. Accordingly, the district court properly denied Andrew’s motion for acquittal. III. Motion for a New Trial ¶ 19 Andrew also contends his convictions for first degree assault and attempted extreme indifference murder with the same victim were mutually exclusive, requiring reversal of both convictions. 
10 Specifically, he argues that because the specific intent element of first degree assault negates the “attitude of universal malice manifesting extreme indifference to the value of human life generally” element of extreme indifference murder, the verdicts are logically and legally inconsistent. Again, we disagree. ¶ 20 In Candelaria v. People, our supreme court held that specific intent may logically and legally coexist with extreme indifference to the value of human life. 148 P.3d 178, 182 (Colo. 2006) (“Whether one acts with [specific intent] or merely [knowingly], he may do so in a manner that . . . demonstrates an extreme indifference to the value of human life generally.”). And the principles announced in Candelaria were recently reaffirmed. See People v. Anderson, 2019 CO 34, ¶¶ 3, 21 (finding sufficient evidence of attempted extreme indifference murder when conduct endangered only one person; the defendant was also convicted for first degree assault against the same victim for the same conduct). ¶ 21 Although Andrew cites contrary holdings from divisions of this court that have not been expressly abrogated, see People v. Beatty, 80 P.3d 847, 852 (Colo. App. 2003); People v. Lee, 914 P.2d 441, 447-48 (Colo. App. 1995), we are bound by the holdings of the 
11 Colorado Supreme Court. See, e.g., People v. Harmon, 2019 COA 156, ¶ 3 n.1. Candelaria and its progeny make clear that convictions for first degree assault and first degree extreme indifference murder can be consistent. ¶ 22 Because Andrew’s convictions are not legally or logically inconsistent, the district court properly denied his motion for a new trial. IV. Conclusion ¶ 23 The judgment is affirmed. JUDGE FOX and JUDGE GRAHAM concur.